## THE MEDIA.[1]

### DALY *v.* THE MEDIA.

#### (*District Court, S. D. New York.* January 22, 1891.)

COLLISION—SCHOONER AND TOW—NARROW CHANNEL—DRIFT.

A tug with a long tow, going through the Arthur kills, perceived a schooner near the Jersey shore, and consequently shaped her own course towards Staten island. The wind was light, but the schooner was apparently under way. When the tug had arrived near the schooner it was perceived that she was drifting; it was then too late for the tow to avoid the schooner. By dropping her anchor the schooner could have stopped her drift. *Held*, that no fault was shown in the tug; and, whether the collision was caused by fault of the schooner or by inevitable accident, the result was the same, that the libel must be dismissed.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty. Suit for damage by collision.

*Hyland & Zabriskie*, for libelant.

*Robinson, Bright, Biddle & Ward*, (Mr. *Hough*, of counsel,) for claimant.

BROWN, J. I do not think the weight of proof in this case convicts the tug of any legal fault. The schooner was small, and easily handled. In the narrow passage of the Arthur kills the tug had a right to assume that the schooner would be managed with prudence. When she was first seen towards the Jersey shore the course of the tug and tow were rightly shaped towards the Staten Island shore, as well with reference to the schooner as to the set of the flood tide towards the Elizabeth docks, and the necessity of keeping the tow away from them and the vessels likely to be there. It is impossible to determine from the testimony just how far apart the schooner and the tug were when the former turned towards the Staten Island shore. The schooner was apparently under way, sailing, and therefore presumably making some headway, and under some control. The tug is entitled to the benefit of this presumption in considering the question of fault in her own navigation. When later the schooner was seen to be drifting, and nearly all headway lost, because the wind had died away, I am satisfied it was too late for the tug to have kept her long tow away from the schooner by going to the westward. The tug could doubtless have passed to the westward herself, but the schooner would have drifted upon the tow. The most obvious course for the schooner was to stop drifting with the tide by dropping anchor. If it be that the question of getting under way in so narrow a channel and in so light a breeze, or the question whether, when thus drifting towards a tow, anchor should be cast, is a fair question of judgment in navigation, and that any mistake in either of these respects ought not to be charged as a fault in the schooner, still that would not convict the tug of fault; and the only result would be to make the accident, under such circumstances, deemed inevitable. In either case, the result would be the same by the failure to establish any faulty navigation in the tug, and the libelant would not be entitled to recover. Giving to the libelant the benefit of any doubt that exists on this point, the dismissal of the libel will be without costs.